IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No.: 7:18-cv-00177

| | |
|---|---|
| ANTOINETTE MOORE on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>CSX CORPORATION, CSX TRANSPORTATION, INC., and CSX INTERMODAL TERMINALS, INC.,<br><br>*Defendants*. | NOTICE OF REMOVAL<br><br>28 U.S.C. §§ 1441, 1446, and 1453<br><br>Removed from the<br>General Court of Justice,<br>Superior Court Division,<br>Robeson County, North Carolina |

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Please take notice that defendant CSX Transportation, Inc. ("CSXT") hereby removes this action to federal court pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 with full reservation of any and all defenses and objections.

In support of this notice, CSXT respectfully submits as follows:

1. On September 25, 2018, named plaintiff Antoinette Moore, on behalf of herself and others similarly situated, filed a civil class action complaint in the Superior Court for Robeson County, North Carolina, Case No. 18 CVS 2432 (the "State Court Action"). The complaint in the State Court Action names CSXT, CSX Corporation, and CSX Intermodal Terminals, Inc. as defendants.

2. The complaint alleges that defendants were negligent in failing to properly construct and maintain a railway underpass in the City of Lumberton, North Carolina and that defendants' negligence caused or contributed to "extensive flooding and damage to homes and

businesses in Lumberton, North Carolina and displacement of hundreds of residents" during and immediately after Hurricane Florence. Compl. ¶ 7.

3. CSXT was served with the complaint on September 28, 2018.

4. Removal is timely pursuant to 28 U.S.C. § 1446(b), in that this notice of removal is being filed within thirty (30) days of service of the complaint. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).

5. Co-defendants CSX Corporation and CSX Intermodal Terminals, Inc. consent to removal of this action.[1]

6. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon CSXT are attached as Exhibits 1 (Civil Summons issued as to CSXT) and 2 (Plaintiff's Complaint).

7. The General Court of Justice, Superior Court Division, for Robeson County, North Carolina is located within the district of the United States District Court for the Eastern District of North Carolina.

8. As shown below, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), in that plaintiff and defendants are of completely diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. As further shown below, this Court also has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), in that the action is a putative class action of at least one hundred proposed class members, the parties are of at least minimally diverse

---

[1] In consenting to CSXT's removal of this action, CSX Corporation and CSX Intermodal Terminals, Inc. do not waive any defenses, objections, or motions available to them under state or federal law, including but not limited to objections to the exercise of personal jurisdiction over these parties in this Court.

citizenship, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

10. By removing the action to this Court, CSXT does not admit any of the facts alleged in the complaint, or waive any defenses, objections, or motions available to it under state or federal law. CSXT expressly reserves the right to challenge the adequacy of the allegations in the complaint. *See Vogler v. Countrywide Home Loans, Inc.*, No. 1:10CV370, 2010 U.S. Dist. LEXIS 88485, at *3-4 (M.D.N.C. Aug. 26, 2010) (finding "nothing improper" with defendants' removal and subsequent motion to dismiss).

11. Pursuant to 28 U.S.C. § 1446(d), a copy of this notice is being served on plaintiff, and filed with the court administrator for this Court and with the court in which the State Court Action was filed.

## THIS COURT HAS DIVERSITY JURISDICTION

12. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332. An action may be removed to federal court under Section 1332 where there is complete diversity of citizenship between the parties, and where the requisite amount in controversy exists. *See* 28 U.S.C. § 1332(a); *see also State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530-31 (1967).

### The Parties Are Completely Diverse

13. According to the complaint, the sole named plaintiff is a resident of Lumberton, North Carolina. Compl. ¶ 1.[2]

---

[2] Unnamed putative class members are not parties for purposes of determining whether complete diversity of citizenship exists. *See Devlin v. Scardelletti*, 536 U.S. 1, 9 (2002).

14. Also according to the complaint, defendants CSXT, CSX Corporation, and CSX Intermodal Terminals, Inc. are Virginia corporations with their principal places of business in the state of Florida. *Id.* ¶¶ 2-4.[3]

15. Thus, complete diversity of citizenship exists as between the parties. *See* 28 U.S.C. § 1332(a)(1).

**The Amount in Controversy Requirement Is Met**

16. With complete diversity of citizenship established, the remaining question for diversity jurisdiction purposes is whether the $75,000 amount in controversy requirement is satisfied.

17. "[T]he general federal rule has long been to decide what the amount in controversy is from the complaint itself." *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961). The Court engages in amount-in-controversy analysis with an eye toward reaching a reasonable reading of the value of the rights being litigated. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).

18. Here, the complaint does not specify an amount of damages sought. In such settings, the removing defendant's burden is to show that the amount in controversy "more likely than not" exceeds the jurisdictional requirement. *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 & 369 (4th Cir. 2013). CSXT need not prove this to a legal certainty; CSXT's burden, instead, is to show that it is more likely than not that the value of the rights being litigated totals at least $75,000. *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196 (4th Cir. 2017) ("The key inquiry

---

[3] Plaintiff alleges "CSX Intermodal Terminals, Inc. is a corporation organized and existing under the laws of the State of Virginia…." Compl. ¶ 6. CSX Intermodal Terminals, Inc. is actually incorporated in Delaware. In any event, it is diverse from the North Carolina plaintiff.

in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but 'an estimate of the amount that will be put at issue in the course of the litigation.'") (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)).

19. In making this calculation, courts consider, among other things, actual or compensatory damages requested, the value of any request for non-monetary relief, and potential punitive damages. *See Francis*, 709 F.3d at 369; *Campbell v. CitiMortgage, Inc.*, No. 1:11CV1017, 2014 WL 4924251, at *2 (M.D.N.C. Sept. 30, 2014), *report and recommendation adopted*, No. 1:11CV1017, 2015 WL 127818 (M.D.N.C. Jan. 8, 2015) (the amount in controversy includes compensatory damages, statutory damages, and punitive damages); *Keith v. Clarke Am. Checks, Inc.*, 261 F. Supp. 2d 419, 422 (W.D.N.C. 2003) (when determining whether the amount in controversy was more than $75,000 at the time the complaint was filed, the court should consider monetary damages as well as the cost to defendant of complying with equitable relief). Courts may consider jury awards in comparable cases as evidence of the value of the injuries alleged. *See, e.g.*, *Fischer v. GlaxoSmithKline, LLC*, No. 1:12CV392, 2012 WL 6738318, at *2 n.3 (M.D.N.C. Dec. 28, 2012), *report and recommendation adopted*, No. 1:12CV392, 2013 WL 1402279 (M.D.N.C. Apr. 8, 2013) (citation omitted) (court may determine amount in controversy by considering, among other things, amounts awarded in "other similar cases").

20. In this litigation, plaintiff Moore asserts that defendants are liable to her under North Carolina common law theories for harm allegedly caused by flooding in Lumberton, North Carolina during and immediately following Hurricane Florence. Plaintiff alleges "economic loss and property damages," Compl. ¶ 28, associated with the alleged "loss of use and destruction of [her] home" and the "inconvenience sustained by the mandatory evacuations." Compl. ¶ 67.

5

Plaintiff seeks monetary damages for property damage, business losses, and inconvenience. *Id*. ¶¶ 67, 75. Plaintiff also seeks "exemplary or punitive damages." *Id*. at 16 (Prayer for Relief).

21. Although CSXT disputes plaintiff's allegations of liability and injury, comparing her allegations to cases with comparable claims demonstrates that courts and juries have awarded damages in such settings in excess of $75,000. *See Woodson v. Allstate Ins. Co.*, 186 F. Supp. 3d 510, 518 (E.D.N.C. 2016), *rev'd on other grounds*, 855 F.3d 628 (4th Cir. 2017) (jury awarded plaintiffs $233,398 for property damage caused by Hurricane Irene, which was trebled to $700,194); Jury Verdict, *Arcement v. GeoVera Spec. Ins. Servs.*, 2:13CV05436, 2014 WL 4417879 (jury awarded plaintiff $85,200 for property damaged by Hurricane Isaac); Jury Verdict, *Kodrin v. State Farm Ins. Co.*, No. 2:06CV08180, 2007 WL 4295409 (E.D. La. Nov. 7, 2007) (jury awarded plaintiff $356,317.96 for property damage caused by Hurricane Katrina, reasonable attorneys' fees, interest, and court costs).

22. Over and above compensatory monetary and non-monetary relief, the complaint also seeks punitive damages. Compl. ¶ 29. Unless it is a legal certainty that punitive damages cannot be recovered, punitive damages are considered in calculating the amount in controversy. *Emrit v. Reverbnation, Inc.*, No. 1:14CV1014, 2014 WL 7185906, at *2 (M.D.N.C. Dec. 16, 2014), *report and recommendation adopted sub nom. Emrit v. Reverb Nation, Inc.*, No. 1:14-CV-1014, 2015 WL 13122882 (M.D.N.C. Jan. 29, 2015).

23. The complaint alleges that CSXT engaged in reckless or willful and wanton conduct that resulted in injury to plaintiff. Compl. ¶¶ 68-75. In North Carolina, such claims may, depending on the facts and circumstances, give rise to punitive damages. By statute, punitive damages may not exceed three times the amount of compensatory damages or $250,000,

whichever is greater. N.C. Gen. Stat. § 1D-25. Accordingly, plaintiff's plea for punitive damages alone surpasses the $75,000 amount in controversy threshold for diversity jurisdiction.

24.     So long as one named plaintiff satisfies the amount in controversy requirement, a federal court sitting in diversity jurisdiction may exercise supplemental jurisdiction over additional plaintiffs, including unnamed class members. *Exxon Mobile Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005). As shown above, considering plaintiff's request for compensatory and punitive damages individually and in combination, a reasonable and common-sense reading of the complaint demonstrates that it is more likely than not that the amount in controversy as to named plaintiff Moore exceeds $75,000. This action is thus properly removed pursuant to 28 U.S.C. § 1332.

## THE COURT HAS JURISDICTION UNDER THE
## CLASS ACTION FAIRNESS ACT OF 2005

25.     Removal is independently authorized under the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. §§ 1332(d) and 1453.

26.     Under CAFA, a federal court has jurisdiction over a putative class action where the proposed class is greater than one hundred persons, there is minimal diversity between the parties, and the amount in controversy exceeds an aggregate amount of $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d).

27.     Plaintiff brings this putative class action on behalf of two classes defined as: (1) "All persons who own real property in Lumberton, North Carolina, and whose homes, vehicles or other real property suffered damage due to flooding from the CSX railway underpass after Hurricane Florence;" and (2) "All persons who owned a business in Lumberton, North Carolina that lost income due to flooding from the CSX railway underpass after Hurricane Florence."

7

Compl. ¶ 36. The complaint alleges that "[t]he Classes consist of hundreds of individuals and businesses." Compl. ¶ 38.

28. As set forth above, there is complete diversity between defendants and the named plaintiff. Accordingly, there is minimal diversity between defendants and the members of the putative class. *See* 28 U.S.C. § 1332(d)(2)(A) (vesting original jurisdiction in federal court where there is minimal diversity such that "any member of a class of plaintiffs is a citizen of a State different from any defendant" and the amount in controversy exceeds $5,000,000).

29. As discussed above, plaintiff seeks to recover, on behalf of herself and "hundreds of individual and businesses," compensatory and punitive damages. Under CAFA, this Court considers whether the value of these claims as to all putative class members in the aggregate exceeds $5 million. *See* 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs.").

30. Comparison of this proposed class action to others pleading comparable claims demonstrates that the amount in controversy is more likely than not in excess of an aggregate sum of $5 million. Pending before this Court is another putative class action arising from the same set of operative facts and events as the present case, styled *Edwards, et al. v. CSX Corporation, et al.*, No. 7:18-cv-00169-BO (Complaint attached as Exhibit 3). The *Edwards* action was filed on the same day as the complaint in this action, and the complaints are virtually identical. Both cases assert the same negligence claims against the same defendants, based on identical factual allegations, and both seek compensatory and punitive damages on behalf of identical classes of individuals and businesses. The alleged "Damage to Plaintiffs and Class Members" set forth in paragraphs 28-36 of the *Edwards* complaint track verbatim those

described in paragraphs 26-34 of the *Moore* complaint. *Compare Moore* Compl. with *Edwards* Compl. (Exhibit 3). Plaintiffs in *Edwards* are members of the putative class in *Moore*, and vice versa.

31. Plaintiffs in *Edwards* explicitly claim that the aggregate value of their injuries and those of the same putative classes proposed in this case "exceeds $5,000,000, exclusive of interest and costs." *Edwards* Compl. ¶ 7. Given that both putative class actions arise from the same set of operative facts, propose identical class definitions, and plead identical claims and damages, the reasonable and common-sense conclusion is that the aggregate amount in controversy in this action more likely than not also "exceeds $5,000,000, exclusive of interests and costs."

32. Because there is minimal diversity of citizenship, the aggregate amount in controversy more likely than not exceeds $5,000,000, and the putative class is greater than one hundred persons, this Court has original subject matter jurisdiction over this putative class action.

33. Because subject matter jurisdiction exists under 28 U.S.C. § 1332, this action is removable pursuant to 28 U.S.C. § 1441(a).

34. Because subject matter jurisdiction exists under 28 U.S.C. § 1332(d), this action is also removable pursuant to 28 U.S.C. § 1453.

**WHEREFORE,** CSXT hereby respectfully gives notice that the above action, formerly pending against it in the Superior Court for Robeson County, North Carolina, is removed to the United States District Court for the Eastern District of North Carolina.

This the 4th day of October, 2018,

/s/ Henry L. Kitchin Jr.
Henry L. Kitchin, Jr.
N.C. State Bar No. 23226
MCGUIREWOODS LLP
300 North Third Street, Suite 320
Wilmington, North Carolina 28401
Telephone:     (910) 254-3822
Facsimile:      (910) 254-3823
Email: hkitchin@mcguirewoods.com

April N. Ross (by special appearance)
N.C. State Bar No. 35478
Scott L. Winkelman (by special appearance)
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
Email: aross@crowell.com
Email: swinkelman@crowell.com

*Attorneys for CSX Transportation, Inc.*

# CERTIFICATE OF SERVICE

I, Henry L. Kitchin, Jr., of McGuireWoods LLP, certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on this day, copies of the foregoing will be served on the following by first-class U.S. Mail, or by the Court's Case Management / Electronic Case Filing ("CM/ECF") system:

>Mr. Mark R. Sigmon
>Sigmon Law, PLLC
>5 West Hargett Street
>Suite 1001
>Raleigh, NC 27601
>*Counsel for Plaintiff*

I certify under penalty of perjury that the foregoing is true and correct.

This the 4th day of October, 2018.

>/s/ Henry L. Kitchin, Jr.
>Henry L. Kitchin, Jr.
>*Attorney for CSX Transportation, Inc.*